UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN KILGORE, | No. 2:11-cv-1822 KJN P |
| Plaintiff, | |
| v. | ORDER and |
| TIM VIRGA, et al., | FINDINGS & RECOMMENDATIONS |
| Defendants. | |

I. Introduction

    Plaintiff is a state prisoner proceeding without counsel. Plaintiff's second amended complaint is before the court. Plaintiff raises multiple claims alleging defendants Nappi, Hamad, and Johnson interfered with plaintiff's access to the courts in violation of the First Amendment. As set forth more fully below, the court finds that plaintiff's second amended complaint should be dismissed without leave to amend.

II. Background

    On September 22, 2011, plaintiff's original complaint was dismissed, and plaintiff was granted leave to file an amended complaint. On December 23, 2011, plaintiff filed an amended complaint, which was ordered served on defendants on March 28, 2012. On May 29, 2012, defendants filed a motion to dismiss the amended complaint, and on June 7, 2012, plaintiff filed a motion to amend. On July 31, 2012, defendants' motion to dismiss was denied without prejudice,

1

and plaintiff's motion to amend was granted.  On October 19, 2012, plaintiff filed a second amended complaint, which is now before the court.[1]

In the second amended complaint, plaintiff contends that "approximately from January 2008 to the present time" defendant Nappi interfered with plaintiff's access to the courts.  (ECF No. 40 at 9.)  The court previously noted that plaintiff exhausted his claims that defendant Nappi interfered with plaintiff's access to the courts through grievance SAC-10-0877.  (ECF No. 7 at 10, citing ECF No. 1-1 at 6.)  With his original complaint, plaintiff provided a copy of his June 30, 2010 appeal SAC-10-0877, in which he states that over the course of the prior two years prison staff misplaced legal work, refused to copy legal work, and refused to allow plaintiff access to the library paging system by refusing to provide forms or deliver legal work to the library box.  (ECF No. 1 at 50.)  Calculating two years prior to June 30, 2010, would be June 30, 2008, not January 2008.  Thus, notwithstanding plaintiff's reference to "approximately from January 2008," it appears plaintiff's claims should, at a minimum, be limited to those arising from June 30, 2008.  Nevertheless, the court has addressed plaintiff's claims concerning defendants' alleged actions taking place from January 2008 to the time of filing of the instant action.

III.  Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

---

[1] Plaintiff submitted numerous exhibits with his complaints and amended complaints.  (ECF Nos. 1 at 35-53; 1-1 at 1-30; 1-2 at 1-23; 1-3 at 1-30; 13 at 17-52; 40 at 25-93; 40-1 at 1-21; 40-2 at 1-6.)  Exhibits appended to a complaint are a part thereof for all purposes.  See Fed. R. Civ. P. 10(c).  Plaintiff also appended numerous exhibits to his motion to amend (ECF Nos. 32 at 6-69; 34 at 8-60.)

indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin v. Murphy, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court may reject allegations of the complaint that contradict matters "properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988, as amended, 275 F.3d 1187 (9th Cir. 2001).

IV. Access to the Courts

A. Legal Standards

Inmates have a fundamental constitutional right of access to the courts and prison officials may not actively interfere with plaintiff's right to litigate. Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). Courts have traditionally differentiated between two types of access claims, those involving the right to affirmative assistance, and those involving an inmate's right to litigate without active interference. Silva v. Di Vittorio, 658 F.3d 1090, 1102 (9th Cir. 2011).

The right to assistance is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. Prisoners also have the right to pursue claims that have a

reasonable basis in law or fact without active interference by prison officials. Silva, 658 F.3d at 1103-04 (finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding all of his legal files constituted active interference where the prisoner alleged cases had been dismissed). This right forbids state actors from erecting barriers that impede the right of access to the courts by incarcerated persons. Silva, 658 F.3d at 1102 (internal quotations omitted).

In both types of access to the courts claims, the defendant's actions must have been the proximate cause of actual prejudice to the plaintiff. Silva, 658 F.3d at 1103-04. To state a viable claim for relief, a plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation" by being shut out of court. Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348, 351); Christopher v. Harbury, 536 U.S. 403, 415 (2002); Phillips, 588 F.3d at 655. For example, a delay in filing a legal document without any attendant adverse consequences does not constitute actual harm. Vigliotto v. Terry, 873 F.2d 1201, 1202 (9th Cir. 1989). Recently, the Ninth Circuit explained this actual injury requirement:

> [T]he Supreme Court has cautioned that despite some past imprecision in its articulation of the protection, access-to-courts rights do not exist in an "abstract, freestanding" form. Lewis, 518 U.S. at 351, 116 S. Ct. 2174. Instead, they are tethered to principles of Article III standing. See id. (remarking that "actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases").FN10   For there to be a judicially cognizable injury, "the party before [the court] must seek a remedy for a personal and tangible harm." Hollingsworth v. Perry, ___U.S. ___, 133 S. Ct. 2652, 2661, 186 L.Ed.2d 768 (2013) (emphasis added); see also New York v. Ferber, 458 U.S. 747, 767, 102 S. Ct. 3348, 73 L.Ed.2d 1113 (1982) (describing "the personal nature of constitutional rights" as a "cardinal principle[ ] of our constitutional order").
>
> FN10. This reflects the fact that in our system of separated powers "it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." Lewis, 518 U.S. at 349, 116 S. Ct. 2174.

See Blaisdell v. Frappiea, 2013 WL 4793184, *4 (9th Cir. 2013) (one plaintiff cannot vicariously assert an access-to-the court claim on behalf of another).

4

In addition, liability under section 1983 cannot be predicated on the theory of respondeat superior, that is, that a supervisor is liable for the wrongful acts of his subordinates. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, a supervisor may be liable only if there exists either "(1) his or her personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Mackinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995). A plaintiff may not seek to impose liability on defendants merely upon position of authority, based on vague or other conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Application

Plaintiff's second amended complaint contains myriad allegations concerning multiple incidents in which plaintiff claims defendants interfered with his access to the courts. (ECF No. 40 at 1-24.) The court addresses each of these claims below.

#### i. Photocopying for Case No. 2:11-cv-1822

Plaintiff's claim that defendant Nappi refused plaintiff's request to photocopy the amended complaint for filing in the instant case should be dismissed because plaintiff cannot show actual injury. On February 28, 2012, the court ordered plaintiff to provide, within thirty days, documents for service of process; on March 9, 2012 plaintiff provided all the documents required. (ECF Nos. 19, 21.) On March 28, 2012, the United States Marshal was ordered to serve process on defendants. (ECF No. 23.) Thus, plaintiff sustained no actual injury from defendant Nappi's alleged refusal to photocopy.

#### ii. Alleged Inability to File Tort Claim

Plaintiff alleges that he was unable to raise a state law negligence claim in Kilgore v. Mandeville, et al., Case No. 2:07-cv-2485 TLN KJN P (E.D. Cal.), because defendant Nappi "withheld the Government claims forms and requested information as to how to preserve such claims." (ECF No. 40 at 13.) However, plaintiff filed his complaint in Case No. 2:07-cv-2485 on November 19, 2007, alleging deliberate indifference to plaintiff's medical needs from 2005 through surgery on February 26, 2007, and through post-surgical care received through March 13, 2007. (Id., ECF No. 5-1 at 16, 33.) Because plaintiff must file a government claim form no later

than six months after the injury accrued (ECF No. 1-3 at 53), liberally construed, plaintiff should have filed a tort claim no later than September 13, 2007, six months after the last alleged date of injury. Plaintiff's alleged inability to obtain a government tort claim form for injuries sustained from 2005 to March 13, 2007, would be of no consequence to Case No. 2:07-cv-2485, because plaintiff's deadline to submit the tort claim had expired before plaintiff filed suit on November 19, 2007, in Case No. 2:07-cv-2485. Similarly, defendant Nappi's alleged refusal to provide the tort form from June 30, 2008, or even as early as January of 2008, cannot support an access to the court claim here, because the September 13, 2007 tort claim deadline had expired prior to defendant Nappi's alleged actions which plaintiff alleges began in 2008.

Thus, plaintiff's claim that he sustained actual injury based on his alleged inability to obtain a tort claim form in connection with his claims in Case No. 2:07-cv-2485 should be dismissed.

iii. Alleged Inability to File Civil Rights Claims

Similarly, plaintiff alleges that at the time he was preparing the amended complaint for filing in Case No. 2:07-cv-2485, defendant Nappi allegedly refused to provide plaintiff requested information as to certain dismissed defendants' job descriptions, and denied plaintiff access to the California Department of Corrections and Rehabilitation policy mandates delineating other responsibilities set forth for each dismissed defendant. (ECF No. 40 at 12.) Plaintiff argues that defendant Nappi's actions caused the dismissal of defendants Brimhall, Mandeville, Nicholson, Spinks and Jennings from Case No. 2:07-cv-2485 for failure to state a cognizable claim. (ECF No. 40 at 12.)

Plaintiff's claim fails because the amended complaint was filed on December 7, 2007, long before plaintiff's instant allegations against defendant Nappi occurred beginning as early as January of 2008.

Moreover, a close reading of the March 6, 2008 order reflects that these defendants were dismissed based on plaintiff's failure to set forth specific factual allegations as to each defendant. The court noted that plaintiff failed to include "specific factual allegations against defendants Brimhall and Jennings," and failed to allege with any degree of particularity overt acts which

6

these defendants engaged in supporting plaintiff's claims.  (2:07-cv-2485 (ECF No. 7 at 7-8).) Although plaintiff's allegations as to defendants Mandeville, Nicholson, and Spinks were described as more specific, the court found that plaintiff failed to state a constitutional claim for inadequate medical care.  (Id. at 8.)  Plaintiff was advised that mere indifference, negligence, or medical malpractice were insufficient, and that the alleged indifference must be substantial.  (Id.) Therefore, these defendants were dismissed based on plaintiff's failure to allege specific facts as to the acts or omissions of each defendant, and because his claims failed to rise to the level of a constitutional violation, not because plaintiff was unable to articulate a specific job duty or cite a particular code section.[2]  Accordingly, plaintiff's claim fails to identify an actual injury.

For all of the above reasons, plaintiff's claims as to his inability to pursue allegations against defendants Brimhall, Mandeville, Nicholson, Spinks and Jennings in Case No. 2:07-cv-2485 should be dismissed.

      iv.  Motion for New Trial

Plaintiff claims that he sustained actual injury based on defendants' interference with his legal mail that resulted in plaintiff's motion for new trial, allegedly submitted on or about November 17, 2011 (ECF No. 40 at 45), not being received by the Alameda County Superior Court for filing in Case No. 141033.  Such a claim is unavailing for several reasons.

The court notes that plaintiff did not exhaust this claim prior to filing the instant action. Plaintiff states that on December 26, 2011, plaintiff initiated appeal No. SAC-12-0140 "after having reviewed his CDC-119 out-going legal mail log and noting that several legal filings sent to the mailroom to mail to this court and the Alameda County Superior Court had not been logged." (ECF No. 40 at 17.)  During the course of this investigation, prison staff discovered that defendant Johnson allegedly hid a large amount of prisoner legal mailroom 2009 to 2012.  (Id.) Plaintiff contends that several legal filings destined for this court, as well as the Alameda County Superior Court, were among those hidden by defendant Johnson.  (Id.)

---

[2] In addition, the court notes that in 2:07-cv-2485, plaintiff did not object to the dismissal of these defendants and did not promptly seek leave to amend to clarify his allegations as to these defendants.  Id.

Plaintiff attempts to connect this claim with the claims he raised in grievance SAC-10-0877. (ECF No. 40 at 17.) However, the court reviewed plaintiff's allegations in grievance SAC-10-0877, and plaintiff did not raise any claims about unlogged legal mail, or the interference with legal mail, in grievance SAC-10-0877. (ECF Nos. 1 at 50, 1-1 at 1-6.) Rather, the focus of grievance SAC-10-0877 was plaintiff's allegations against defendant Nappi, alleged denials of his priority library user ("PLU") status, and issues concerning his inability to receive legal materials through the legal paging system. (Id.)

Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, and is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). The instant action was filed on July 12, 2011. (ECF No. 1.) Therefore, claims raised in plaintiff's appeal No. SAC-12-0140, which was allegedly filed on December 26, 2011, and exhausted in 2012, cannot be raised in this action which plaintiff filed on July 12, 2011.

But even assuming plaintiff had exhausted this claim prior to filing this action, such claim is unavailing. In the February 14, 2012 order, the Alameda County Superior Court reviewed plaintiff's ex parte motion to amend the motion for new trial, filed on November 30, 2011, his letter to Judge Kingsbury, filed on December 5, 2011, and the motion to supplement the motion for new trial, filed on December 20, 2011. (ECF No. 40 at 45.) The Alameda County Superior Court stated that

> after judgment has become final, there is nothing pending to which a motion may attach. . . . Here, the judgment has become final and there are no pending criminal proceedings. (See *People v. Kilgore*, Aug. 30, 2006. . . .) The Legislature has not authorized postconviction motions for new trial, and such motion should be made before judgment is rendered. (See Penal Code § 1182.) Accordingly, the motion is denied.
>
> In his supplemental motion, [plaintiff] requests that the court liberally treat his motion for new trial as a habeas petition. However, even if treated as a habeas petition relief is denied as procedurally barred. First, the grounds asserted are based on the trial record, thus [plaintiff] failed to exhaust his appellate remedies and is not entitled to habeas relief. [Citations omitted.] Further, relief is also barred as the claim is untimely, and [plaintiff] failed to show an absence of substantial delay and has also failed to demonstrate good cause for the failed delay, or that his claim falls within any of the exceptions to the untimeliness bar. (*In re Robbins* (1998) 18 Cal.4th 770, 780.) Finally, relief is barred by the rule

> against successive petitions. (*In re Clark* (1993) 5 Cal.4th 750, 797; *In re Miller* (1941) 17 Cal. 2d 734, 735.) [Plaintiff] filed a habeas petition in this court in 2008 unsuccessfully challenging the restitution fine. [Plaintiff] fails to justify the piecemeal presentation of his claims. Accordingly, habeas relief is denied as procedurally barred.

(ECF No. 40 at 45.)

Here, plaintiff concedes that he was committed to state prison on April 9, 2004, following his conviction in the Alameda County Superior Court.[3] (ECF No. 40 at 7.) Even assuming that plaintiff's conviction became final in 2006, any motion for new trial mailed to the Alameda County Superior Court in 2011 was untimely, and, under California law, inappropriately filed following entry of judgment on plaintiff's criminal conviction. Thus, plaintiff's claim based on the alleged mishandling of plaintiff's 2011 motion for new trial should be dismissed because the motion for new trial was legally frivolous. Although plaintiff's motion was styled "motion for new trial," it was not a direct appeal from the 2004 conviction that the Supreme Court envisioned in Lewis, 518 U.S. at 354. Moreover, plaintiff's effort to frame the motion as a request for habeas relief was procedurally barred because it was untimely filed, and the claims contained in his motion for new trial were not presented in his first petition for habeas relief. In addition, plaintiff's allegation that his "habeas filing in the Alameda Superior Court was denied because the court did not receive plaintiff's January 8, 2012 ex parte letter," is refuted by the text of the court's order as set forth above.

Finally, even if plaintiff's filing fell within the category contemplated by Lewis, the superior court had benefit of plaintiff's amended motion for new trial, considered plaintiff's new claims, but found them procedurally barred. Thus, plaintiff did not sustain an actual injury.

For all of these reasons, plaintiff's claim that he sustained actual injury based on the mishandling of plaintiff's 2011 motion for new trial should be dismissed.

////

---

[3] In the petition for writ of habeas corpus filed in the California Supreme Court, plaintiff stated that he was convicted of first degree murder on March 24, 2003, and sentenced to life without parole on April 9, 2004. (ECF No. 40 at 48.) Plaintiff stated that his conviction was affirmed by the California Supreme Court on December 13, 2006. (ECF No. 40 at 51.)

### v. Alleged Systemic Defects

To the extent that plaintiff attempts to challenge systemic defects in the prison law library or his access to the library, plaintiff fails to state a cognizable civil rights claim. Plaintiff contends that he was required to wait his turn to use computers in the library when all the computers were either inoperable or occupied by other inmates, and that defendant Nappi refused to hire library clerks who were skilled in matters of criminal and civil law, refused to open the law library as scheduled, and refused plaintiff law library access on October 2, 2010. However, plaintiff does not have an "abstract, free standing right to a law library or legal assistance;" rather, plaintiff is only entitled to the right of access to the courts, for which he must demonstrate actual injury. Lewis, 518 U.S. 343 at 350-51. Thus, plaintiff's claims as to alleged systemic defects in the prison law library or his library access should be dismissed.

### vi. Alleged Inability to File in the Northern District and the Ninth Circuit

Plaintiff alleges that defendants interfered with his ability to file documents in the United States District Court for the Northern District of California, and the Ninth Circuit Court of Appeals, in connection with his petition for writ of habeas corpus challenging his underlying criminal conviction. (ECF No. 40 at 13.)

#### a. Specific allegations

In his second amended complaint, plaintiff specifically alleges the following.

On December 27, 2009, plaintiff was placed on a two month lockdown, and the district court denied his habeas petition on December 28, 2009. On January 6, 2010, plaintiff submitted (1) a PLU request informing prison officials that petitioner had less than ten days to file motions pursuant to Rules 52(b) and 60(b), and (2) a library paging request ("LPR") for the rules of court for filing a certificate of appealability, and copies of People v. Marsden, 2 Cal. 3d 118, 84 Cal. Rptr. 156 (Cal. 1970) (trial court must permit a defendant seeking a substitution of counsel after the commencement of the prosecution's case to specify the reasons for his request), and Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980) ("In order to demonstrate a violation of his Sixth Amendment rights on the basis of an alleged conflict, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."). Plaintiff alleges that he did not

receive any of these requested documents. (ECF No. 40 at 13.) Plaintiff claims that defendant Johnson was responsible for the nonresponses to and withholding of plaintiff's January 6, 2010 LPR. (ECF No. 40 at 18.) On January 7, 2010, plaintiff alleges that he sent the Ninth Circuit a request for extension of time to submit the certificate of appealability. Plaintiff claims that a Doe defendant "intentionally delayed mailing this request until January 11, 2010." (ECF No. 40 at 14.) The Ninth Circuit did not receive plaintiff's request until January 15, 2010.

On January 21, 2010, plaintiff had not heard from the Ninth Circuit, so he alleges he gave his January 6, 2010 requests to Correctional Officer M. Fong, who later informed plaintiff that the requests were placed in the C-Facility watch office mail slot for delivery to the mailroom. (ECF No. 40 at 14.) Plaintiff alleges that on January 26, 2010, plaintiff submitted a request for interview to defendant Nappi inquiring whether the January 21, 2010 renewed requests had been received, and reminding defendant that plaintiff had a deadline by which to file the certificate of appealability. On January 27, 2010, library clerk Jack McFadden returned plaintiff's request for interview, and informed plaintiff that his renewed requests had not been received, and that defendant Nappi had retrieved all requests submitted to the mailroom.

On January 27, 2010, plaintiff alleges he sent a request for interview to defendant Johnson inquiring as to the whereabouts of the renewed requests, informing him of the certificate of appealability deadline, and advising him that plaintiff had submitted numerous LPRs and appeals via the institutional mail that were not being delivered. (ECF No. 40 at 14.) Plaintiff alleges he received no response to this request for interview. On January 27, 2010, plaintiff filed appeal SAC-C-10-0536 requesting an investigation into the missing documents, and asked that the library paging request system be changed. (ECF No. 40 at 15.)

On January 31, 2010, the deadline to file the certificate of appealability, plaintiff claims his legal documents and requests were found in the mailroom and returned unprocessed. That same day, plaintiff filed the certificate of appealability without benefit of the Marsden and Cuyler cases.

On May 11, 2010, plaintiff was interviewed for appeal SAC-C-10-0536 by Sgt. Zuber. Plaintiff alleges that during this interview, Sgt. Zuber informed plaintiff that defendant Nappi

11

"deliberately left plaintiff's January 21, 2010, legal requests in the mailroom and refused to process them." (ECF No. 40 at 15.) Plaintiff claims that as a result of his appeal, the LPR process was changed to provide that during lockdowns, officers should take possession of LPRs and place them in the C Facility Legal Librarians mail box in the C-Facility Watch Office, and LPRs should not be placed in the institutional mail. (ECF No. 40 at 15, citing May 11, 2010 Memorandum, ECF No. 40 at 41.)

On October 27, 2011, the Ninth Circuit denied plaintiff's request for certificate of appealability.

On October 31, 2011, plaintiff submitted another LPR to the first watch commander, requesting the Marsden case. (ECF No. 40 at 16.) On November 2, 2011, while plaintiff was held in administrative segregation, plaintiff requested PLU status to prepare a petition for rehearing of the denial of the certificate of appealability pursuant to Rule 40 of the Federal Rules of Appellate Procedure ("a petition for panel rehearing may be filed within 14 days after entry of judgment."). On November 10, 2011, plaintiff filed an informal administrative appeal inquiring as to his request for PLU status or access to legal materials to compose the petition. (ECF No. 40 at 16.) Sgt. Holloway responded that defendant Hamad denied plaintiff PLU status and access to legal material. (Id.) On November 13, 2011, plaintiff filed the motion to reconsider the denial of the certificate of appealability without benefit of the necessary legal materials. (ECF No. 40 at 16.) On November 23, 2011, the Ninth Circuit denied plaintiff's motion for reconsideration. (Id.)

       b. Review of the Relevant Court Dockets and Documents

  1. Northern District

On October 5, 2007, plaintiff filed a 161 page petition for writ of habeas corpus in the Northern District of California, challenging his 2003 conviction on multiple grounds, none of which included an alleged conflict of interest claim based on what took place during plaintiff's pre-trial or post-trial Marsden hearings. Kilgore v. Walker, Case No. 3:07-cv-5124 SI (N.D. Cal.) (ECF No. 1). An answer was filed on November 19, 2008.

////

12

1    On January 5, 2009, plaintiff filed a third motion for production of transcripts from his
2 prior conviction in Oklahoma; the court denied the motion on March 5, 2009. Id. (ECF Nos. 20,
3 26.)
4    On January 21, 2009, plaintiff filed a motion for an order requiring respondent to provide,
5 *inter alia*, a copy of plaintiff's Marsden motion, and the transcript from the February 11, 2003
6 Marsden hearing. Case No. 3:07-cv-5124 (ECF No. 21 at 1-2.) Plaintiff argued that these
7 records were pertinent to plaintiff's reply to respondent's defense that petitioner agreed to trial
8 counsel's tactical decisions. Id. (ECF No. 21 at 2.) Plaintiff further stated that the "matters in
9 which counsel ill-advised [plaintiff] on are set forth in the declaration set forth with the Writ of
10 Habeas Corpus, which caused [plaintiff] to forego his right to testify and call witnesses on his
11 behalf." Id. Plaintiff claimed that the Marsden motion "set forth the fact that [plaintiff] had prior
12 to trial informed the trial court . . . that his counsel had been misinforming/ill-advising him as to
13 matters of law related to his case and had refused to declare conflict." Case No. 3:07-cv-5124
14 (ECF No. 21 at 2.) Plaintiff noted that although the record on appeal contained the "clerk's
15 docket and minutes" from the Marsden hearing, the record did not contain his motion or the
16 transcript from the hearing. Case No. 3:07-cv-5124 (ECF No. 21 at 2.) Plaintiff then stated that
17 "[t]he matter at hand, counsel's ill-advice, the trial court failed to make an active inquiry into the
18 allegations. The trial court thus breached its duty pursuant to People v. Marsden. . . ." Case No.
19 3:07-cv-5124 (ECF No. 21 at 2.) On March 5, 2009, the district court denied plaintiff's motion,
20 noting that the "court already ordered respondent to file a copy of the transcripts of all portions of
21 the court proceedings that have been previously transcribed and that are relevant to a
22 determination of the issues presented by the petition." Id. (ECF No. 26.)
23    On December 28, 2009, the district court denied plaintiff's petition, and declined to issue
24 a certificate of appealability. Id. (ECF No. 29.)
25    On January 13, 2010, plaintiff filed a motion to amend findings of fact pursuant to Rule
26 52(b) of the Federal Rules of Civil Procedure; no mention of the Marsden hearing was made.
27 Case No. 3:07-cv-5124 (ECF No. 31.) On January 13, 2010, plaintiff filed a motion to vacate the
28 judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure; no Marsden challenge

13

was raised. Case No. 3:07-cv-5124 (ECF No. 32.) These motions were denied on January 21, 2010. Id. (ECF No. 35.) On February 16, 2010, the court denied plaintiff's motion to stay the January 21, 2010 order. Id. (ECF No. 39.)

On January 14, 2010, plaintiff filed a notice of appeal. Id. (ECF No. 33.) On October 27, 2011, the Ninth Circuit denied plaintiff's request for a certificate of appealability as to the January 14, 2010 notice of appeal. Id. (ECF No. 40.)

On February 24, 2012, plaintiff filed a second notice of appeal which was transmitted to the Ninth Circuit. Id. (ECF Nos. 43, 44.) On April 27, 2012, the Ninth Circuit sought a ruling on the issuance of a certificate of appealability, and on May 1, 2012, the Northern District denied issuance of the certificate of appealability. Id. (ECF Nos. 48, 49.)

2. Ninth Circuit

On February, 2010, plaintiff filed a 470 page motion for certificate of appealability. Kilgore v. Walker, Case No. 10-15119 (9th Cir.). Plaintiff did not include his proposed Marsden claim in the text of this motion. Case No. 10-15119 (ECF No. 3 at 1-41.) On February 12, 2010, plaintiff filed his opening brief, referencing the denial of his Rule 52(b) and 60(b) motions, but did not specifically refer to his proposed Marsden claim. Case No. 10-15119 (ECF No. 7.) On October 27, 2011, plaintiff's request for certificate of appealability was denied, and all pending motions were denied as moot. Id. (ECF No. 11.) Plaintiff sought reconsideration or rehearing en banc, but the motion was denied. Id. (ECF No. 19.)

3. Analysis

Taking plaintiff's allegations as true, plaintiff fails to demonstrate actual injury. First, none of the challenged filings in these two courts were a direct challenge to plaintiff's conviction, and did not involve the filing of his first federal petition for writ of habeas corpus, or his traverse to the answer. Indeed, plaintiff's habeas petition was denied on December 28, 2009, prior to the January 6, 2010 requests and the subsequent claims of alleged interference. Thus, because plaintiff's habeas filings were submitted after plaintiff's habeas petition was denied, and do not fall within the categories contemplated by Lewis, plaintiff fails to state a cognizable access to the courts claim.

Second, review of plaintiff's filings in the Northern District reveals that on January 21, 2009, plaintiff sought to have the Marsden motion and transcript submitted after respondent filed the answer; thus, plaintiff was aware of this absence for almost a year prior to the district court's December 29, 2009 decision, and could have obtained a copy of the Marsden and Cuyler opinions at some point during that time frame. Moreover, the Northern District considered plaintiff's request for the Marsden materials but found such records were not relevant to plaintiff's habeas claims. Indeed, plaintiff's January 21, 2009 filing did not articulate a conflict of interest claim, but rather posited his request for the materials in terms of plaintiff's other ineffective assistance of counsel claims contained in his federal petition.[4]

Third, even if plaintiff did not become aware of the legal significance of his proposed conflict claim, plaintiff became aware of the factual predicate of his proposed Marsden claim at the time he attended the first Marsden hearing on February 11, 2003. (ECF No. 40 at 49.) Under 28 U.S.C. § 2244(d)(1)(D), plaintiff had one year from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence in which to file his claim for federal habeas relief. Thus, plaintiff was required to raise his conflict claim within one year, plus any time for tolling.

In addition, plaintiff filed a second Marsden motion after he was found guilty, and a second Marsden hearing was held on June 27, 2003. (ECF No. 40 at 55.) Following that hearing, new counsel was appointed to represent plaintiff during the motion for new trial, and plaintiff concedes he informed the new counsel of his conflict-of-interest claim. (ECF No. 40 at 56.) Plaintiff alleges the new counsel then rendered ineffective assistance of counsel by failing to raise plaintiff's conflict claim. (Id.) Because plaintiff was aware of the facts supporting his conflict of

---

[4] Plaintiff makes much of appellate counsel's December 22, 2011 declaration that counsel was not provided the reporter's transcript from the February 11, 2003 Marsden hearing. However, even if the Marsden motion or transcript of the Marsden hearing were not included in the court record, plaintiff concedes that the record contained the clerk's docket sheet and minutes from the Marsden hearing. Moreover, the declaration from appellate counsel does not state that appellate counsel did not consider filing a conflict claim; rather, counsel simply states that he was not provided and did not obtain the reporter's transcript from the February 11, 2003 Marsden hearing. (ECF No. 40-1 at 21.)

interest claim in 2003, and even states he asked new counsel to include such a claim in the motion for new trial, plaintiff's conflict claim should have been included in his initial collateral challenges, not after his initial federal habeas petition was denied. Plaintiff unreasonably delayed bringing his Marsden and Cuyler claims to federal court, and therefore cannot demonstrate actual injury.

For all of the above reasons, plaintiff fails to state a cognizable access to the courts claim based on his allegations that defendants interfered with his legal paging requests and court filings submitted to the Northern District and the Ninth Circuit after January 6, 2010, because he cannot demonstrate actual injury.

V. Alleged Verbal Harassment/Threats

Plaintiff alleges that defendant Nappi "constantly harassed plaintiff with obscene expletives" and stated his intention to "create a disruptive environment so as to thwart plaintiff's ability to litigate." (ECF No. 40 at 11.)

Verbal harassment or verbal abuse by prison officials generally does not constitute a violation of the Eighth Amendment. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (harassment does not constitute an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (harassment in the form of vulgar language directed at an inmate is not cognizable under § 1983); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993) (verbal threats and name calling are not actionable under § 1983); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (Arkansas state prisoner does not have cause of action under § 1983 for being called obscene name by prison employee). Nor are allegations of mere threats cognizable. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987) (mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result).

Thus, plaintiff cannot state a cognizable civil rights claim based solely on alleged verbal harassment.

////

////

VI. <u>Efforts to Revisit the Habeas Decision</u>

In his request for relief, plaintiff asks the court for an order granting plaintiff leave to re-file and litigate his original petition for writ of habeas corpus to include the claims plaintiff alleges defendants hindered plaintiff from raising. (ECF No. 40 at 23.) However, plaintiff is advised that a civil rights action is not the proper mechanism by which to revisit another court's decision on his habeas petition. Rather, proper relief on a civil rights claim alleging interference with plaintiff's access to the courts is monetary damages. To the extent plaintiff seeks release from custody, he must seek such relief through a petition for writ of habeas corpus filed in the proper court. This court does not have jurisdiction to offer plaintiff habeas relief.[5]

VII. <u>Conclusion</u>

The court has liberally construed plaintiff's claims concerning defendants' actions from January 2008 to the present, but plaintiff has been unable to amend his complaint to demonstrate suffering an actual injury, despite two opportunities to do so. Thus, it would be futile to grant plaintiff further leave to amend.

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

IT IS RECOMMENDED that plaintiff's second amended complaint be dismissed without leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

---

[5] Plaintiff was convicted in Alameda County, and previously sought habeas relief in the United States District Court for the Northern District of California. Because plaintiff previously sought habeas relief, he is required to move in the United States Court of Appeals for the Ninth Circuit for an order authorizing the Northern District court to consider any successive application for habeas relief. 28 U.S.C. § 2244(b)(3).

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 16, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/kilg1822.56